# Exhibit 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF Westchester

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

Gary Lipson

(Names of Plaintiff(s)/Petitioner(s))

vs

INTERNATIONAL BUSINESS MACHINES CORPORATION, and

FIDELITY INVESTMENTS INSTITUTIONAL SERVICES COMPANY, INC.

(Names of Defendant(s)/Respondent(s))

**SUMMONS**

**INDEX No.** _____

- - - - - - - - - - - - - - - - - - - - - - - - - - -

To the Person(s) Named as Defendant(s) Above:

    PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED to answer the complaint of the plaintiff(s) herein and to serve a copy of your answer on the plaintiff(s) at the address indicated below within 20 days after the service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

    **YOU ARE HEREBY NOTIFIED THAT** should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

Dated: May 3, 2017

| **Plaintiff** | **Defendants** |
|---|---|
| Gary Lipson | **INTERNATIONAL BUSINESS MACHINES CORPORATION** |
| 20 N Broadway, N266 | 1 New Orchard Road |
| White Plains, NY 10601 | Armonk, NY 10504-1722 |
| (203) 583-6737 | |
| | **FIDELITY INVESTMENT INSTITUTIONALSERVICES COMPANY, INC.** |
| | C/O C T CORPORATION SYSTEM |
| | 111 EITHTH AVENUE |
| | NEW YORK, NY 10011 |

Venue:    Plaintiff(s) designate(s) Westchester County as the place of trial. The basis of this designation is: (Enter County above; then select one category below, listing specific County)

        [X]    Plaintiff(s)' Residence in Westchester County.
        [ ]    Defendant(s)' Residence in _____ County.
        [ ]    Other -- Describe:

**NOTE: THIS FORM OF SUMMONS MUST BE SERVED WITH A COMPLAINT**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF Westchester

-------------------------------------------------------x

Gary Lipson,

Plaintiff,

                                **Index No.**

- against -

                                **COMPLAINT AND
JURY DEMAND**

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

and

FIDELITY INVESTMENTS INSTITUTIONAL SERVICES COMPANY, INC.

Defendants.

-------------------------------------------------------x

      Plaintiff Gary Lipson, pro se, as and for his complaint against defendants International

Business Machines Corporation, hereinafter referred to as "IBM", and the Defendant FIDELITY

INVESTMENTS INSTITUTIONAL SERVICES COMPANY, INC., hereinafter referred to as

"Fidelity" alleges, upon knowledge as to himself and otherwise upon information and belief, as

follows:

## NATURE OF THE ACTION

1. Plaintiff, Gary Lipson was originally employed by Lotus Development (hereinafter
   referred to as "Lotus") in June of 1985 and remained an employee of "Lotus" up until and
   including August 1986.

2. However, sometime in 1995, IBM acquired all rights title and interest in the firm Lotus.
   Thereby adopting the liabilities by operation of law from Lotus.

3. Defendant IBM is the alter ego of the predecessor, "Lotus."

1

4. Upon information and belief, Defendant IBM, as successor in interest of Lotus, assumes all interest and liabilities of that existed in Lotus at the time of the acquisition.

5. Plaintiff established a term of employment at Lotus as stated above.

6. Plaintiff was rehired by Defendant IBM continuously from November 1999 through February 2017.

7. "Terms of Employment" include Plaintiff's employment include the times averred to in paragraphs 5 and 6 above.

8. Plaintiff invested his life efforts, both financial, and actual time with the Defendant firm based on the Term of Employment.

9. The Terms of Employment were prescribed in writing, memorialized and expressed in the decades of services provided therein.

10. At all times herein, Plaintiff relied to his detriment on the false promises, innuendo and actual written representations as to his pension benefits, rights and financial investment in the Defendant firm

11. Plaintiff brings this action to recover the substantial monetary losses suffered as result of Defendants fraudulent misrepresentations, conversion of assets and coercion.

12. In 2017, with no options the Plaintiff was technically terminated from the Defendant corporation. Although, Plaintiff voluntarily left the place of employment, it was the implied stress, coercion and undue influence that caused him to resign. It was an undisclosed, coercion by default, innuendo, persuasion and duress lead to this Plaintiff's demise.

13. Plaintiff was the victim of the intentional lies and misrepresentations as to his vested benefits, actual coverages and net worth.

2

14. Plaintiff relied on those misrepresentations that unequivocally lead to his losses sustained and recovery sought herein.

15. Defendant IBM reviewed the Plaintiff's employment dates in particularity and shared such determinations with the Plaintiff.

16. Plaintiff was on the Defendant's payroll during the Terms of Service, Plaintiff relied on such determinations made by the Plaintiff, and as such fully vested all pension and benefits rights, title and interest.

17. Plaintiff's claims follow:

## PARTIES

18. Plaintiff, Gary Lipson, previously an employee of the Defendant IBM, and is a person residing in White Plains, New York.

19. Upon information and belief, Defendant, Business Machines Corporation, hereinafter referred to as "IBM", is a limited liability partnership organized under the laws of the State of New York, with its principal place of business in Armonk, New York.

20. FIDELITY INVESTMENTS INSTITUTIONAL SERVICES COMPANY, INC. is a Massachusetts corporation (hereafter referred to as "Fidelity") doing business in New York.

21. Upon information and belief, IBM is a corporation organized under the laws of the State of New York, with its principal place of business in Armonk, New York.

22. Upon information and belief, Fidelity is a corporation organized under the laws of State of Massachusetts, with its principal place of business in Boston, Massachusetts and engaged in significant business in the State of New York.

3

## JURISDICTION AND VENUE

23. This court has jurisdiction pursuant to CPLR §§ 301 and 302, and venue is proper pursuant to CPLR § 503.

## STATEMENT OF FACTS

24. Plaintiff, Gary Lipson was originally employed by Lotus in June of 1985 through August of 1986.

25. Plaintiff was "rehired" by Defendant IBM in November of 1999 and Plaintiff continued employment with Defendant IBM through February of 2017.

26. In 1995, the Defendant IBM, acquired right title and interest in the firm Lotus. The Defendant acquired the rights to the firm including the employees associated therein.

27. Plaintiff's rights were vested in 1995 and the sale of the asset included the rights, title and interest in all the employees of said firm. The acquisition, provided an expressed and written contractual liability for same. The contract of which, is a subject matter of this law suit.

28. The expressed and implied, covenants of good faith, Federal laws and New York and Massachusetts State mandates are equally applicable.

29. Under all terms of the transfer of the asset and firm to Defendant IBM, all obligations to Plaintiff employee were legally conveyed.

30. Plaintiff relied on the express terms of said transfer.

31. Plaintiff understood the implied and disclosed terms of said transfer.

32. Further, Plaintiff was "rehired" by Defendant IBM, on November 15, 199.

4

33. The rehire date is poignantly the subject of the conversion of assets of Plaintiff. Defendants used the transfer as a monopolistic method to defraud the Plaintiff and thousands of others from vested benefits, contractual obligations and a Federally mandated pension.

34. Plaintiff relies on the integrity of the contract and the agreements expressed therein to assert this claim of coverage, damages for the breach thereof.

35. Plaintiff was effectively employed by the Defendant IBM since 1985. (IBM is the alter-ego of "Lotus" and an assumption during acquisition)

36. The employment dates and retention of this Plaintiff are stipulated.

37. Notably, the fraud occurred during 1999. Therein, Defendants, individually and jointly, covertly conspired to dismantle Plaintiff and his earned income benefits.

38. Under false pretenses, the Defendant IBM began investigating Plaintiff's connection to lotus development. Said investigation was a "sham" and truly an effort to dismantle the earned benefits of Plaintiff.

39. August 2011, Plaintiff was privy to the efforts of Defendants, privy to emails and under the impression at all times therein being suppressed and coerced to resign. The actions of the Defendant IBM were intentional, willful and fraudulent under all circumstances.

40. The Defendants emails, notices and verbal representations disclosed the "means to an end."

41. Plaintiff was coerced to resign, with a regime dismantling decades of effort, Billions intellectual property income, and a lifetime of dedicated service behind him.

42. Plaintiff was trained, at the Defendants expense, and used that training to generate Billions in intellectual property income for the Defendant firm.

5

43. Plaintiff, was "used" for many years, and at the time when he established a foundation and base, well established business strategy and Billions in intellectual property income, Plaintiff is wrongfully terminated. The termination was a forced and coerced resignation.

44. Defendants initially exposed their true intentions in December 1999.

45. Defendant IBM shared a series of emails with Plaintiff as prescribed herein throughout December and January of 2001, beginning on 12/22/1999 through 1/18/2001.

46. Specifically, on January 18th, 2001, Defendant advised Plaintiff the "investigation" was complete, the matter settled and the case resolved and closed.

47. Notably, Plaintiff relied on the statement, considered it binding and always believed an already earned right. In Plaintiff's mind, the "investigation" was meaningless and he thought at all times he was entitled to the pension vesting dating back to at least 1995.

48. However, now with the "written agreement" dated January 18th, 2001, it was memorialized in writing.

49. Plaintiff reasonably relied to his detriment to the story manufactured by the Defendant IBM.

50. Plaintiff, was the victim of a premeditated, calculated and potentially criminal effort and plan designed to eliminate him.

51. Plaintiff was a financial burden, and Plaintiff fell prey to a conspiracy to be eliminated. To which he was.

52. The notes, representations and affirmations all confirmed that Plaintiff was entitled to at least six percent (6%) credit.

53. The Plaintiff contents that he is entitled to coverage under the pension plan that existed at Defendant IBM's firm as of 1995.

6

54. In furtherance of the foregoing, Defendant's employment services division of IBM provided Plaintiff dated July 28, 2000 and September 11, 2000 with a "Ceris Letter". Said letter qualifies the details as prescribed herein.

55. This Plaintiff relies on a Ceris Letter, dated 9/11/2000, therein it provided in pertinent part provides Plaintiff participations and eligibility dates are as follows:

    a. Plaintiff's original Plan Participation Date (PPD):    7/01/1999

    b. Service Reference Date (SRD):    6/24/1985

    c. Pension Reference Date (PRD):    7/01/1999

    d. Vesting Reference Date (VRD):    7/05/1995

    e. Vacation Eligibility Date (VED):    8/24/1985

56. Said dates are prescribed in the Ceres letters and stipulated herein.

57. Thereafter, on September 27th, 2011, the Defendants, violated the Federal laws, State mandates, covenants with Plaintiff, and RICO laws with a fraudulent retraction of all the benefits prescribed above.

58. In furtherance of the "illegal" acts, Defendant IBM sent a letter to the Plaintiff revoking benefits and altered then existing vested pension reporting content and the resulting data was intentionally eliminated. Said acts are an obstruction of justice, criminal and warrant further investigation.

59. The "illegal retraction" constitutes a fraud on the Plaintiff and criminal altering of a federally mandated pension notice. Illegal actions and permissible prescription to assertions of fraud.

60. Said "illegal retraction" provides in pertinent part as follows:

    a. Retraction of earned pension benefits.

    b. Evidence of a conspiracy of the Defendants to coerce Plaintiff.

7

    c. Breach of an expressed agreement, implied covenant of good faith, expressed contract and an employment obligation.

    d. Fraud in the inducement.

    e. Evidence of an intentional misrepresentation, affirmed with Plaintiff's detrimental reliance upon same.

    f. Contradicts the express terms of Plaintiff's employment.

    g. Violates Federal laws.

    h. Constitutes collusion, duress, coercion and undue influence by the Defendants, jointly and severally.

    i. Negligence misrepresentations and neglect.

61. This action follows.

## CAUSE OF ACTION
### 29 U.S.C. § 1140.Section 510,
**Enforced by an action under section 502(a)(3), to protect employees from actions designed to prevent the vesting of pension rights under the Employee Retirement Income Security Act of 1974 ("ERISA")**

62. The complaint, herein, alleges violations of § 29 U.S.C. §140.Section 510, of the Employee Retirement Income Security Act of 1974 ("ERISA") arising out of the breach of a covenant of "vested" pension benefits and a reduction by defendant employer.

63. Section 502(a)(1)(b) authorizes an individual to institute a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. 29 U.S.C. § 1132(a)(3).

8

64. Defendants' agreement to provide services renders this case applicable to and warrants relief under section 502(a)(1)(B) of ERISA, which applies where an employee is in fact entitled to benefits and has not received them.

65. The agreement to provide benefits was absolute and this statute is applicable. Plaintiff claims that the Defendants, IBM aborted the vesting or enjoyment of benefits have almost unanimously concluded that the most analogous state-law cause of action under section 510 is "wrongful termination" or "retaliatory discharge," catch-all descriptions of state-law cause of action encompassing an employee's claim that he was discharged in violation of public policy.

66. Notably, the distinction between the wrongs contemplated by section 510 is by no means easily perceived and thereby, under 29 U.S.C. § 1132(a)(3), there is no statute of limitations for enforcement.

67. The amounts alleged were agreed, in writing under letter contract, dated, and due and owing plaintiff.

68. Subject matter jurisdiction is founded upon § 502 of ERISA, 29 U.S.C. § 1132, authorizing a civil action by a participant of an "employee pension benefit plan" or "pension plan" to obtain appropriate relief for violations of the Act.

69. Plaintiff, by virtue of his participation in The New York IBM Corporation Employees' Pension and Retirement Plan ("Pension Plan"), had an accrued vested interest in his pension entitlement the actuarial value of which amount in excess of two million dollars.

70. Defendant improperly, without notice, grant of authority or color of title deducted this amount of the pension and the time for investment.

9

71. Plaintiff alleges that the change in date, in effect, constituted (1) a forfeiture of his vested pension benefit in violation of § 203(a) of ERISA, 29 U.S.C. § 1053(a); and (2) a diversion of plaintiff's vested pension benefit owed by the defendant in violation of § 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1), to the extent that the present value of that pension benefit was used to reduce the severance pay obligation of the defendant to the plaintiff.

72. These allegations are sufficient to sustain this Court's subject matter jurisdiction under § 502 of ERISA, 29 U.S.C. § 1132 and a claim upon which relief can be granted.

## SECOND CAUSE OF ACTION
### Violation of the ADEA

73. Plaintiff repeats and reasserts the allegations of paragraphs 1 through 72 above.

74. Defendants have violated the ADEA by discriminating against plaintiffs because of their age in the terms and conditions of their employment, as described above

Plaintiff is qualified as membership in a "protected class" Plaintiff was subject to the aforementioned adverse action and clearly and arbitrarily discriminated against.

75. Under the circumstances, given the length of tenure with the Defendant firm, the age of the Plaintiff highlighted the severity of the Defendants actions and is qualification under ADEA as for the position, an adverse employment action, and circumstances that give at least minimal support to an inference of discrimination.

76. The Plaintiff has sustained a distinct and qualified "adverse and material change" in the terms of the employment with the Defendant IBM.

77. The ADEA, specifically protects the employee protects Plaintiff from such reduction in wages, benefits or pension.

10

78. In the instant matter, the Defendants actions in September 2011, are defined as "adverse employment action."

### THIRD CAUSE OF ACTION
### Violation of the Human Rights Law

79. Plaintiff repeats and reasserts the allegations of paragraphs 1 through 72 above.

80. Defendant IBM, has violated the New York Human Rights Law, N. Y. Exec. Law § 290 et seq. by discriminating against plaintiffs because of his "long tenure with Defendant", as described above.

81. Plaintiff was employed with Defendant, and/or a predecessor firm since 1985. During said time, Defendant vested in the Plaintiff and his age rendered him a class covered under the statute.

82. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and New York State Human Rights Law, Executive Law § 290 et seq. Plaintiff asserts the actions of the Defendant IBM are directly correlated to and consistent with Plaintiff "age" and long tenure of employment.

83. Plaintiff alleges that the change in date, in effect, constituted (1) a forfeiture of his vested pension benefit in violation of the law herein; and (2) a diversion of plaintiff's vested pension benefit owed by the defendant in violation New York Human rights law.

### FOURTH CAUSE OF ACTION
### Fraudulent Misrepresentation Inducing Plaintiff to stay and "accept" employment from 1985 to the current date.

84. Plaintiff repeats and reasserts the allegations of paragraphs 1 through 83 as though fully set forth herein.

85. While working for Lotus and sufficiently vested in the terms of said employment.

11

86. On or about 1999, Plaintiff was summoned to stay on with negotiated terms and conditions as more particularly described herein.

87. The Defendant IBM, at the time of reemployment discussions made several representations that were materially false, in particular:

   (a) that Defendant IBM was an exciting firm that valued creativity and intelligence and ambition and allowed associates to grow as quickly as they could.

   (b) The Plaintiff was offered training and education

   (c) The Plaintiff was offered extension and continuation of all vested pension benefits

   (d) The Plaintiff was to expect an annual bonus of 15% of Plaintiff's base pay

   (e) The agreement was memorialized

88. Plaintiff and Defendant IBM entered into an executory employment agreement (the agreement) in 1999. Plaintiff was rehired and the agreement terms included but not limited to the pension rights, the extension thereof, the agreement to education and other rights and responsibilities.

## FIFTH CAUSE OF ACTION
### Fraud

89. Plaintiff repeats and reasserts each allegation set forth previously in this complaint

90. Defendant IBM made false representations to Plaintiffs.

91. Defendant made these false representations with knowledge and belief (*scienter*) that the representations were false and for the purpose of exploiting Plaintiffs.

92. Defendant IBM, intended to induce Plaintiff to enter into an employment relationship and contract for the purpose of exploitation for the Defendant's own financial benefit and, in essence, to steal Plaintiffs' money.

12

93. Plaintiff justifiably relied upon the representations made by Defendant IBM.

94. Defendant IBM acts were illegal, despicable, reckless, malicious, deliberate, and immoral.

95. As the result of Defendant acts, Plaintiff incurred damages.

96. Accordingly, Defendant IBM is liable for fraud.

97. Defendant IBM is also liable for punitive damages.

98. Defendant IBM benefited from the fraud and used the money acquired therefrom to their benefit.

99. Defendant IBM continues to use the funds that they fraudulently obtained from Plaintiff.

100.      The Defendant corporation is being used for the purpose of illegally shielding funds that Defendant IBM has fraudulently stolen from the Plaintiffs.

101.      Consequently Defendant IBM is liable for fraud

102.      Defendant IBM is also liable for punitive damages.

### SIXTH CAUSE OF ACTION
### Conversion

103.      Plaintiff repeats and reasserts the allegations of paragraphs 1 through 102 as though fully set forth herein.

104.      Plaintiff worked for the Defendant IBM, or its predecessor since 1999 and vested earned benefits in pension payments.

105.      Plaintiff service reference date, as stated by Defendant IBM, is 1985.

106.      Defendant IBM had the use of said funds, earning potential and access at all times referenced herein.

13

107.     Plaintiff, upon voluntary termination demanded the return of their money from

Defendant IBM and Defendant Fidelity.

108.     Defendant IBM and Defendant Fidelity improperly refused to return the money.

109.     Defendant IBM and Defendant Fidelity are therefore jointly and severally liable

for the tort of conversion.

110.     Defendant IBM and Defendant Fidelity acted illegally, maliciously, and

recklessly with the purpose of intentionally exploiting the Plaintiff.

111.     Defendant IBM and Defendant Fidelity are therefore liable for punitive damages

for converting Plaintiff's funds.

112.     Defendant IBM with the cooperation of Defendant Fidelity used the money for

corporate use and profit.

113.     Defendant Fidelity deposited, invested and controlled said money for the purpose

of illegally and fraudulently shielding it from Plaintiff.

114.     Consequently, Defendant Fidelity colluded with Defendant IBM and is

vicariously liable for conversion through Defendant IBM, under a corporate theory of

"reverse piercing of the veil."

115.     Defendant IBM and Defendant IBM are jointly and severally liable for punitive

damages.

### SEVENTH CAUSE OF ACTION
### Tortious Interference with a contract

116.     Plaintiff repeats and reasserts each allegation set forth previously in this

complaint.

117.     A binding contract existed between the Plaintiffs and Defendant IBM since the

first week in October 1999.

14

118.    Defendant IBM knew of the existence of this contract.

119.    Defendant IBM intentionally and, with malice towards the Plaintiff, breached the express and implied conditions of the contract.

120.    As a result of the breach, Plaintiff incurred damages, which include, but are not limited to, pecuniary loss and the loss of opportunities to make substantial profits from the contract.

121.    Defendant IBM is therefore liable for the tort of tortious interference with a contract.

122.    Defendant IBM is also liable for punitive damages.

## EIGHTH CAUSE OF ACTION
### Breach of implied contract and covenant of good faith

123.    Plaintiff repeats and reasserts the allegations of paragraphs 1 through 122 as though fully set forth herein.

124.    Plaintiff and Defendant IBM entered into a binding agreement, the terms of which are agreed upon.

125.    The agreement was supported by valuable consideration.

126.    Defendant IBM intentionally breached this agreement, implied and express, to act in accordance with same.

127.    As a result of the breach, Plaintiff has damages, which include, but are not limited to, pecuniary loss and the loss of opportunities to make substantial profits from the contract.

128.    Accordingly, Defendant IBM is liable for breach of contract.

15

## NINTH CAUSE OF ACTION
### Unjust enrichment

129.     Plaintiff repeats and reasserts the allegations of paragraphs 1 through 83 as

though fully set forth herein.

130.     Plaintiffs worked pursuant to and in accordance with the employment

"agreement" for the Defendant IBM, since 1999.

131.     Defendant IBM, profited substantially, from the benefits of said services, efforts

and work performed by the Plaintiff.

132.     Defendant IBM further, benefited from the residual sales, business income,

earned good will and increased business practices as a result of the services and efforts of

Plaintiff.

133.     The unjust enrichment is attributed to the work efforts, services and ingenuity of

the Plaintiff. Said enrichment was at Plaintiff's expense.

134.     There is no adequate remedy at law.

135.     The circumstances are such that equity and good conscience require Defendant

IBM to make restitution.


## TENTH CAUSE OF ACTION
### DECLARATORY JUDGMENT

136. Plaintiff repeats and reasserts the allegations of paragraphs 1 through 83 as though fully

set forth herein.

137. An actual and justiciable controversy presently exists between Plaintiffs and Defendant

IBM and Defendant Fidelity regarding Plaintiff's interest in the benefits earned and the

valuation of same.

16

138.    The Plaintiff seeks an immediate Order of the Court seeking declaratory relief under the terms of the employment agreement with the Defendant IBM.

139.    Plaintiff has established, monetary damages will not suffice.

140.    Plaintiff has suffered irreparable harm from the undue influence, fraud, duress and conversion of earned benefits, pension funds and actual money of the Plaintiff.

141.    The Defendants continue to control and poses Plaintiff funds.

142.    Plaintiff has established right, title and interest in said funds.


### ELEVENTH CAUSE OF ACTION
### IBM, Fidelity, and its shareholders
### Breach of fiduciary duty, theft of corporate opportunity, conversion of
### Corporate assets, and waste

143.    Defendant Fidelity Investment, assumed the positions of Defendant IBM and its corporate officers.

144.    Defendant IBM and Defendant Fidelity, jointly, severely and cooperatively stole corporate funds for their own personal businesses and to pay for their own personal expenses.

145.    Defendant IBM and Defendant Fidelity were well aware of Plaintiff's benefits as prescribed at all times prior to September 2011.

146.    Defendant IBM and Defendant Fidelity breached their fiduciary duties as corporate officers, committed conversion of corporate assets, have stolen corporate opportunities, and committed waste of corporate assets.

147.    Without a preliminary and permanent injunction enjoining Defendant IBM and Defendant Fidelity from their unlawful acts. Plaintiff will incur an irreparable injury for which there is no adequate remedy at law.

17

148.     Defendant IBM and Defendant Fidelity are therefore liable, pursuant to Bus.

Corp. Law s 626 and 720, Plaintiff for breach of fiduciary duty, theft of corporate

opportunity, and conversion of corporate assets.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

1. On the cause of action (fraud), judgment against Defendants for the following relief: **(a)** a
permanent injunction as described below; **(b)** specific performance of contract; **(c)** alternatively
to specific performance, a money judgment in the amount of $10 million in actual,
compensatory, and expectation damages and $10 million in punitive damages;

2. On the cause of action (conversion), judgment against Defendants **(a)** a permanent injunction
as described below; **(b)** specific performance of contract; **(c)** alternative to specific performance,
a money judgment in the amount of $10 million in actual, compensatory, and expectation
damages and $10 million in punitive damages;

3. On the cause of action (tortious interference with a contract), judgment against Defendant
IBM, for the following relief: **(a)** a permanent injunction as described below; **(b)** a money
judgment in the amount of $10 million in actual, compensatory, and expectation damages and
$10 million in punitive damages;

4. On the cause of action (breach of employment contract), judgment against Defendant IBM for
the following relief: **(a)** specific performance of contract; **(b)** alternative to specific performance,
money damages in the amount of $10 million in actual, compensatory, and expectation damages;

18

5. On the ninth cause of action (unjust enrichment), judgment against Defendants, for the following relief: **(a)** specific performance of contract; **(b)** alternative to specific performance, money damages in an amount to be determined at trial but not less than $500,000.

6. On the tenth cause of action (declaratory judgment), pursuant to CPLR 3001, adjudging that, under the terms of the employment agreement all terms and conditions therein have vested.

7. On the eleventh cause of action (breach of fiduciary duty/theft of corporate opportunity/conversion of corporate assets), judgment Defendants pursuant to Bus. Corp. Law § 626, granting all relief available under Bus. Corp. Law § 720 including, but not limited to, a an accounting and a preliminary and permanent injunction: **(a)** enjoining Defendants from diverting and commingling funds of the pension and assets; **(b)**enjoining Defendants from further benefit from Plaintiff efforts and **(c)** enjoining Defendant from further disbursements in contravention to the order of the court.

8. A permanent injunction against Defendants enjoining them, (a) from removing or destroying any property of the pension, **(b)** from using any money or assets of the pension.

9. Other relief, together with the above relief, that this Court issue a judgment against all Defendants for costs, fees, attorneys' fees, and interest and such other legal or equitable relief that is appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to 4102 of New York Practice Law and Rules, the Plaintiff hereby demands trial by jury in this action of all issues so triable.

Dated: May 1, 2017

FILED: WESTCHESTER COUNTY CLERK 05/01/2017 02:03 PM
NYSCEF DOC. NO. 1

INDEX NO. 56777/2017
RECEIVED NYSCEF: 05/03/2017

BY.

GARY LIPSON

20

## VERIFICATION BY DEFENDANT

I, Gary Lipson, Pro-Se, states the following pursuant to the penalty of perjury: I am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true

GARY LIPSON, PRO-SE

Dated: May 1, 2017

Sworn to before me this 1st day of May 2017

Notary Public:

NOVELETTE A BROCKINGTON
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01BR6293108
Qualified in Westchester County
Commission Expires Nov. 25, 2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF Westchester

--------------------------------------------------------------x

Gary Lipson,

Plaintiff,

    **Index No.**

- against -

    **COMPLAINT AND**
    **JURY DEMAND**

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

and

FIDELITY INVESTMENTS INSTITUTIONAL SERVICES COMPANY, INC.

Defendants.

--------------------------------------------------------------x

## PLAINTIFF'S COMPLAINT

GARY LIPSON, PRO-SE