PATRICK W. SHEA
ELIZABETH A. VANDERLINDE
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

*Attorneys for Defendants*
INTERNATIONAL BUSINESS MACHINES CORPORATION, and
FIDELITY WORKPLACE SERVICES LLC.

UNITED STATES U.S. DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARY LIPSON,<br><br>             Plaintiff,<br><br>   -against-<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION, and<br><br>FIDELITY WORKPLACE SERVICES LLC,<br><br>           Defendants. | INDEX NO. 17-cv-4335 |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.   FACTUAL BACKGROUND ................................................................................. 2

II.  ARGUMENT ................................................................................................... 4

    A.   Lipson's Various ERISA Claims Fail to State a Claim for Relief and Must be Dismissed ................................................................................................. 5

        1.   Count I Alleging Estoppel Under ERISA Fails Because IBM Did Not Make a Promise to Lipson That He Could Reasonably Rely On, and Moreover, Estoppel Claims Under ERISA May Only Be Maintained Under Extraordinary Circumstances ...................................... 5

        2.   Lipson Sets Forth No Facts to Support Count II Alleging Age Discrimination Under ERISA ................................................................ 7

        3.   Count III, Plaintiff's § 204(h) Claim, Fails Because The Plan Was Not Amended ........................................................................................ 8

        4.   Count IV Alleging Breach of Fiduciary Duty Fails to State a Claim and Must be Dismissed ....................................................................... 9

            a.   Any Breach of Fiduciary Duty Claim Related to the Plan is Time-Barred ................................................................................. 9

            b.   Defendants Cannot Be Liable for Breach of Fiduciary Duty for Correcting the Plaintiff's Benefits Pursuant to the Terms of the Plan ..................................................................... 9

        5.   Count V Must Be Dismissed Because Plaintiff Was Not Discriminated Against; Rather, His Pension Benefits Were Corrected Pursuant to the Terms of the Plan ........................................... 11

        6.   Count VI, Alleging a Violation of § 102, Fails Because The Plan Was Not Modified—Plaintiff's Benefits Were Simply Corrected to Reflect the Proper Service Reference Date and Plaintiff Was Notified of the Correction ......................................................................... 14

    B.   Count VII Alleging Discrimination Under NYSHRL Also Fails Because, Not Only is His Claim Time-Barred, But He Has Also Not Alleged Any Facts Supporting His Claim That Correction of the Service Reference Date Was Discriminatorily Motivated by Plaintiff's Age ............................................. 14

    C.   Lipson's Fraud Claims in Counts VIII and IX Fail Because He Has Not Pled His Claims With Particularity ................................................................. 16

III. CONCLUSION ................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Aramony v. United Way Replacement Benefit Plan*,
    191 F.3d 140 (2d Cir. 1999).................................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................4, 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................4, 5, 7

*Bonovich v. Knights of Columbus*,
    146 F.3d 57 (2d Cir. 1998)..................................................................................5

*Denniston v. Taylor*,
    No. 98 Civ. 3579 (LTS), 2004 U.S. Dist. LEXIS 1512 (S.D.N.Y. Feb. 6,
    2004) .......................................................................................................10

*DePasquale v. DePasquale*,
    No. 12-CV-2564 (RRM)(MDG), 2013 WL 789209 (E.D.N.Y. Mar. 1, 2013)
    *aff'd*, 568 F. App'x 55 (2d Cir. 2014)..................................................................9

*Dister v. Cont'l Grp., Inc.*,
    859 F.2d 1108 (2d Cir. 1988)...........................................................................11, 12

*Dorvil v. Hilton Hotels Corp.*,
    25 A.D.3d 442, 807 N.Y.S.2d 369 (1st Dep't 2006) ...........................................15

*Eurycleia Partners, LP v. Seward & Kissel, LLP*,
    12 N.Y.3d 553, 910 N.E.2d 976 (2009)...........................................................16

*Fitch v. Chase Manhattan Bank, N.A.*,
    64 F. Supp. 2d 212 (W.D.N.Y. 1999)...........................................................5, 8, 9

*Gioia v. Forbes Media LLC*,
    501 F. App'x 52 (2d Cir. 2012) .....................................................................16

*Graffino v. Trs. of the NYSA-ILA Pension Trust Fund & Plan*,
    No. 14 Civ. 8577, 2015 U.S. Dist. LEXIS 90902 (S.D.N.Y. July 13, 2015)...........7

*Greifenberger v. Hartford Life Ins. Co.*,
    131 F. App'x 756 (2d Cir. 2005) .....................................................................5

*Hamilton v. Gen. Motors Hourly-Rate Emps. Pension Plan*,
    101 F. Supp. 3d 202 (N.D.N.Y. 2015)...........................................................5, 6

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

*Harris v. Mills*,
   572 F.3d 66 (2d Cir. 2009)..............................................................................4

*Hart v. Equitable Life Assurance Soc.*,
   No. 02 Civ 2364 (HB), 2002 WL 31682383 (S.D.N.Y. Nov. 26, 2002), *aff'd*,
   75 F. App'x 51 (2d Cir. 2003) ....................................................................6, 10

*Hart v. Equitable Life Ins. Soc.*,
   75 F. App'x 51 (2d Cir. 2003) ...............................................................9, 10, 11

*IKB Int'l S.A. v. Bank of Am. Corp.*,
   584 F. App'x 26 (2d Cir. 2014) ....................................................................16

*Johnson v. Nextel Commc'ns, Inc.*,
   660 F.3d 131 (2d Cir. 2011)..........................................................................16

*Klein v. N.Y. Univ.*,
   786 F. Supp. 2d 830 (S.D.N.Y. 2011)............................................................15

*Krys v. Pigott*,
   749 F.3d 117 (2d Cir. 2014) *aff'd*, 674 F. App'x 92 (2d Cir. 2017)................16, 17

*Monaco v. Smith*,
   No. 00 Civ. 5845(RMB), 2004 WL 203009 (S.D.N.Y. Feb. 2, 2004)...................12

*Moore v. Metro. Life. Ins. Co.*,
   856 F.2d 488 (2d Cir. 1988)............................................................................8

*Pendleton v. QuikTrip Corp.*,
   567 F.3d 988 (8th Cir. 2009) .........................................................................12

*Piccone v. Town of Webster*,
   511 F. App'x 63 (2d Cir. 2013) .....................................................................15

*Sandberg v. KPMG Peat Marwick, LLP*,
   111 F.3d 331 (2d Cir. 1997)...........................................................................11

*United States ex rel. Takemoto v. Hartford Fin. Servs. Grp., Inc.*,
   157 F. Supp. 3d 273 (W.D.N.Y. Jan. 20, 2016)...............................................17

*Van Zant v. KLM Royal Dutch Airlines*,
   80 F.3d 708 (2d Cir. 1996).............................................................................14

*Wegmann v. Young Adult Inst., Inc.*,
   No. 15 Civ. 3815 (KPF), 2016 WL 827780 (S.D.N.Y. Mar. 2, 2016) ...........6, 12, 13, 14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.*,
   404 F.3d 167 (2d Cir. 2005)..................................................................................5, 6

*In re WorldCom, Inc.*,
   No. 02-13533 (AJG), 2005 Bankr. LEXIS 3465 (Bankr. S.D.N.Y. June 3,
   2005) ...............................................................................................................15

**STATUTES**

29 U.S.C.
   § 1022..............................................................................................................14
   § 1024(b)..........................................................................................................14
   § 1054(b)(1)(H)...................................................................................................7
   § 1054(h)(1).......................................................................................................8
   § 1104................................................................................................................9
   § 1104(a)(1)(D)...................................................................................................9
   § 1140..............................................................................................................11

**OTHER AUTHORITIES**

29 C.F.R. § 2509.75-8, FR-11 ...................................................................................9

Defendants International Business Machines Corporation ("IBM") and Fidelity Workplace Services LLC ("Fidelity") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint of Plaintiff Gary Lipson ("Lipson" or "Plaintiff"). The Amended Complaint fails to state a claim pursuant to Rule 12(b)(6).

In his Amended Complaint, Lipson seeks to be awarded service credit under the IBM Pension Plan (the "Plan") that he plainly never earned. More specifically, he claims he should receive credit as if he had been employed by IBM for a 14-year period he spent attending law school and business school and working for other entities, while performing no services for IBM. The basis for this claim is a mistaken service date Lipson was given when he was hired by IBM in 1999, a mistake that was corrected almost six years ago.  As a matter of law, such a mistake furnishes no basis for awarding fourteen years of pension benefits that are not available under the Plan. Lipson apparently recognizes this, so in his Amended Complaint he alleges that the service date was not a mistake, but an attempt by IBM to defraud him by promising benefits that were not available under the Plan and that IBM had no intention of providing. But Lipson fails to support this claim, which is wholly implausible on its face, by alleging any facts to support it. Instead, he relies on bare legal conclusions that do not satisfy the requisite pleading standard. For this reason, and the reasons discussed below (including the fact that most of Plaintiff's claims are time-barred), the Court should grant Defendants' motion to dismiss the Amended Complaint in its entirety.

I.      FACTUAL BACKGROUND[1]

Lipson's employment history is not in dispute. Lipson worked for IBM from November 15, 1999, to February 28, 2017. (*See* Amended Complaint ("Compl."), attached as Exhibit A to the Declaration of Patrick W. Shea ("Shea Decl."), ¶¶ 20, 83.) Prior to his employment at IBM, Lipson worked for Lotus, an entity that IBM acquired in 1995. (Compl. ¶¶ 14-15, 17.) However, he only worked at Louts for a little more than one year, from June 24, 1985, to August 22, 1986, and he did not work for IBM until thirteen years later. (Compl. ¶¶ 19-20.)

To support his claim for pension benefits dating back to June 24, 1985, despite the fact that Lipson began employment at IBM on November 15, 1999, Lipson relies on an erroneous service reference date that he mistakenly received during his employment at IBM that treated Lipson as though he had continuously worked at IBM or a predecessor entity since June 24, 1985. (Compl. ¶ 30.) However, Lipson's true service reference date for purposes of calculating pension benefits and retirement eligibility under the Plan is November 15, 1999—his date of hire. (*See* Compl. ¶ 20.) Moreover, Lipson's one year of service at Lotus, having occurred thirteen years prior to his date of hire at IBM, does not count toward his pension benefits or retirement eligibility at IBM, and Lipson does not allege that he would be entitled to pension benefits for a thirteen-year gap in service under the terms of the Plan.

The erroneous service reference date came to light when Lipson went on a pre-retirement leave of absence for which he was not eligible. (Compl. ¶ 50.) IBM discovered the mistake, corrected Lipson's service reference date, and immediately notified Lipson of the error. (Compl. ¶¶ 50, 52-54.) As a result, Lipson returned from the leave of absence, and his personal pension account was adjusted to remove pay credits he had not actually earned under the terms of the

---

[1] All facts are drawn from the Amended Complaint whose factual allegations, but not legal conclusions, are accepted as true for purposes of this motion only.

Plan. (Compl. ¶¶ 67, 76.) IBM did not make any changes to Lipson's entitlements under the Plan; it simply corrected his erroneous service reference date. (*See* Compl. ¶ 53.) Of course, Lipson was aware of his own employment history, and he knew or should have known that the fourteen years he did not work at IBM would not count toward his pension or retirement. Moreover, as a participant in the Plan, he could have easily reviewed its terms and determined the correct service reference date.

On October 12, 2011, Lipson requested in writing that the plan administrator change his service reference date back to the erroneous date of June 24, 1985, despite the fact that he began employment at IBM on November 15, 1999. (*See* Compl. ¶80.) The plan administrator denied his request on November 29, 2011. (*See id.*) Lipson appealed the decision in writing on January 24, 2012, and the plan administrator denied his appeal on April 19, 2012. (*See id.*)

Lipson originally commenced the action entitled *Gary Lipson v. International Business Machines Corporation, and Fidelity Investments Institutional Services Company, Inc.*, Index No. 56777/2017, in the Supreme Court of the State of New York, County of Westchester (the "State Court Action") on May 3, 2017—more than five years after IBM corrected the service reference date. (*See* Shea Decl., Exhibit B.) Defendants removed this civil action to the United States District Court for the Southern District of New York, on the grounds of federal question and supplemental jurisdiction, pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446, on June 8, 2017. (*See* Shea Decl., Exhibit C.)

Following a pre-motion conference with the Court, on July 31, 2017, Plaintiff filed an amended complaint, alleging nine causes of action. (*See* Complaint.) Counts I through VI allege various violations under the Employee Retirement Income Security Act of 1974 ("ERISA"), including claims for estoppel (Count I), age discrimination (Count II), failure to provide notice of

a reduction in benefits (Count III), breach of fiduciary duty (Count IV), discrimination based on exercising a benefit right (Count V), and violations regarding the summary plan description (Count VI). (Compl. ¶¶126-37.) Count VII alleges unlawful discrimination based on age in violation of the New York State Human Rights Law ("NYSHRL"), and Counts VIII and IX allege common law claims of fraudulent inducement and fraud. (Compl. ¶¶ 138-44.) Defendants now move to dismiss the Complaint in its entirety for failure to state a claim pursuant to Rule 12(b)(6).

## II.    ARGUMENT

Rule 8(a)(2) mandates that "a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy Rule 8(a)(2)'s pleading requirements and survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]lthough 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions[.]'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (a plaintiff must plead facts that "nudge[] [his] claims . . . across the line from conceivable to plausible") (internal citation and quotation marks omitted).

Here, the fundamental predicate for all of Lipson's claims—that the erroneous service date was not a mistake, but a deliberate intent to defraud—is wholly implausible and supported

only by threadbare legal conclusions. The amended Complaint thus fails to satisfy the pleading

standards of *Twombly* and *Iqbal* and must be dismissed.

    A.    <u>Lipson's Various ERISA Claims Fail to State a Claim for Relief and Must be Dismissed</u>

        1.    Count I Alleging Estoppel Under ERISA Fails Because IBM Did Not Make a Promise to Lipson That He Could Reasonably Rely On, and Moreover, Estoppel Claims Under ERISA May Only Be Maintained Under Extraordinary Circumstances

To state a claim for estoppel under ERISA, Plaintiff must plausibly allege "(1) a promise,

(2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise

is not enforced." *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 151 (2d Cir.

1999); *Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.*, 404 F.3d 167, 172 (2d Cir. 2005)

("A plaintiff must satisfy four elements to succeed on a promissory-estoppel claim: '(1) a

promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the

promise is not enforced.'" (citing *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 79 (2d

Cir. 1996)). The reliance, however, must be reasonable, and a plaintiff must demonstrate a

promise that the defendant reasonably should have expected to induce action or forbearance on

the part of the plaintiff.  *See Bonovich v. Knights of Columbus*, 146 F.3d 57, 62-63, (2d Cir.

1998) ("for purposes of ERISA, a plaintiff must demonstrate a promise that the defendant

reasonably should have expected to induce action or forbearance on the plaintiff's part."); 

*Hamilton v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 101 F. Supp. 3d 202, 212 (N.D.N.Y.

2015). Notably, to establish an estoppel claim in the ERISA context, a plaintiff must also

establish the existence of extraordinary circumstances, *id.*, and "a finding of 'extraordinary

circumstances' requires proof tantamount to fraud."  *Fitch v. Chase Manhattan Bank, N.A.*, 64 F.

Supp. 2d 212, 226 (W.D.N.Y. 1999); *Greifenberger v. Hartford Life Ins. Co.*, 131 F. App'x 756,

759 (2d Cir. 2005) ("the 'extraordinary circumstances' necessary to equitable estoppel in the context of an ERISA plan require conduct tantamount to fraud.").

Plaintiff's estoppel claim is purportedly based on receipt of documents indicating an incorrect service reference date. ( *See* Compl. ¶¶ 58, 64, 84.) Unfortunately, in the complicated pension world, such mistakes are not uncommon, and courts have repeatedly held that such mistakes will not support an estoppel claim for two distinct reasons.

First, such a mistake is not a promise reasonably intended by the employer to induce action or forbearance. Lipson, as a lawyer and an MBA in possession of the Plan documents, simply cannot plausibly claim that he reasonably relied on a purported promise to credit him with 14 years of service that he did not actually earn. *Hamilton*, 101 F. Supp. 3d at 212; *Weinreb*, 404 F.3d at 173 (affirming the district court's holding that "at no point did the Hospital ever promise [plaintiff] that he would have life insurance . . . [t]he evidence [plaintiff] proffers does not, in the aggregate, raise any genuine issue of material fact as to an explicit or implied promise to provide life-insurance benefits automatically - especially in light of the substantial evidence of actual knowledge of the enrollment requirement").

Second, absent proof of fraud, this type of mistake is not deemed sufficiently extraordinary to warrant application of the estoppel doctrine. *See Wegmann v. Young Adult Inst., Inc.*, No. 15 Civ. 3815 (KPF), 2016 WL 827780, at *6 (S.D.N.Y. Mar. 2, 2016) (dismissing estoppel claim where plaintiff failed to plead extraordinary circumstances; "[plaintiff] asserts only reliance on Levy's alleged representations; but reliance is one of the four threshold requirements for an estoppel claim, and consequently does not satisfy the extraordinary circumstances prong."); *Hart v. Equitable Life Assurance Soc.*, No. 02 Civ 2364 (HB), 2002 WL 31682383, at *5 (S.D.N.Y. Nov. 26, 2002) ("defendants *mistakenly* calculated the monthly

amount of plaintiff's benefits based on misinformation—namely, the number of years she actually worked. In other words, although plaintiff must now suffer the consequences of an unfortunate mistake, she has not successfully demonstrated that the circumstances of her case were 'extraordinary'"), *aff'd*, 75 F. App'x 51 (2d Cir. 2003).

Recognizing this limitation, Lipson seeks to assert claims for fraud and fraudulent inducement but alleges no facts in support of such claims. Instead, Lipson merely states that some unspecified individual at IBM purportedly promised him credit for 14 years of service despite not working for IBM during that time and that individual later decided not to honor that promise. This threadbare legal conclusion simply cannot support Lipson's estoppel claim under ERISA, and Count I must be dismissed. *Twombly*, 550 U.S. at 557; *Graffino v. Trs. of the NYSA-ILA Pension Trust Fund & Plan*, No. 14 Civ. 8577, 2015 U.S. Dist. LEXIS 90902, at *2-3 (S.D.N.Y. July 13, 2015) (dismissing ERISA claims because the plaintiff "fail[ed] to include allegations that establish a basis for relief").

    2.    **Lipson Sets Forth No Facts to Support Count II Alleging Age Discrimination Under ERISA**

29 U.S.C. § 1054(b)(1)(H) provides, "a defined benefit plan shall be treated as not satisfying the requirements of this paragraph if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age." This section aims to eliminate age-based reductions in the rate of benefit accrual applicable to beneficiaries of benefit plans.

In support of his § 1054(b)(1)(H) claim, Plaintiff points to no Plan provision that would violate this requirement. Instead he states, in conclusory fashion, "IBM intentionally promised lifetime benefits to lure (and retain) Plaintiff and other employees away from other firms paying higher salaries, and then denied those benefits after Plaintiff was of an age where he could

neither make up the salary difference nor obtain alternative benefits at a reasonable cost."

(Compl. ¶ 91.) However, Plaintiff has failed to actually allege any facts indicating how the Plan

was discriminatory in nature, apparently solely relying on his repeated claim that he was entitled

to benefits he did not earn as a result of the service date mistake. As implied throughout the

Complaint, Plaintiff's benefits were based on years of service, and Plaintiff's benefits were

calculated pursuant to the terms of the Plan based on the years he *actually worked* for IBM.

Nothing in the Complaint supports Plaintiff's baseless age discrimination claim, which must be

dismissed.

3.     Count III, Plaintiff's § 204(h) Claim, Fails Because The Plan Was Not
       Amended

Pursuant to ERISA § 204(h), "[a]n applicable pension plan may not be *amended* so as to

provide for a significant reduction in the rate of future benefit accrual unless the plan

administrator provides the notice described in paragraph (2) to each applicable individual." 29

U.S.C. § 1054(h)(1) (emphasis added). But no plan amendment occurred here. The Second

Circuit has squarely held that informal communications concerning benefits do not constitute

plan amendments. *See Moore v. Metro. Life. Ins. Co.*, 856 F.2d 488, 492 (2d Cir. 1988) ("absent

a showing tantamount to proof of fraud, an ERISA welfare plan is not subject to amendment as a

result of informal communications between an employer and plan beneficiaries"); *Fitch*, 64 F.

Supp. 2d at 225 ("the benefit estimates themselves are akin to the 'informal communications'

which, in *Moore,* were held to be incapable of amending the plan"). Thus, neither the incorrect

service reference date that was furnished to Plaintiff, nor the subsequent correction of that date

constituted a plan amendment. Accordingly, § 204(h) has no applicability here, and Count III

should be dismissed.

    4.      Count IV Alleging Breach of Fiduciary Duty Fails to State a Claim and Must be Dismissed

        a.      Any Breach of Fiduciary Duty Claim Related to the Plan is Time-Barred

The statute of limitations for breach of fiduciary duty claims under ERISA is statutorily prescribed and such claims must be brought within the "*earlier* of (1) six years from the date of the 'last action which constituted a part of the breach or violation, or [ ] in the case of an omission the latest date on which the fiduciary could have cured the breach or violation,' or (2) three years after 'the earliest date on which the plaintiff had actual knowledge of the breach or violation.'" *DePasquale v. DePasquale*, No. 12-CV-2564 (RRM)(MDG), 2013 WL 789209, at *7 (E.D.N.Y. Mar. 1, 2013) (*citing* 29 U.S.C. § 1113), *aff'd*, 568 F. App'x 55 (2d Cir. 2014). Throughout the Complaint, Plaintiff repeatedly acknowledges that he had actual knowledge of the purported breach of fiduciary duty—IBM's reliance on a revised service reference date—in 2011. (*See, e.g.,* Compl. ¶¶ 50, 53, 54.) Thus, the statute of limitations on any breach of fiduciary duty claim related to the Plan expired in 2014. As a result, Count IV is time-barred and must be dismissed.

        b.      Defendants Cannot Be Liable for Breach of Fiduciary Duty for Correcting the Plaintiff's Benefits Pursuant to the Terms of the Plan

Pursuant to 29 U.S.C. § 1104, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). In executing his/her duties, a fiduciary may "rely on information, data, statistics or analyses furnished by persons performing ministerial functions for the plan," 29 C.F.R. § 2509.75-8, FR-11, and "a fiduciary's reliance on erroneous data will not automatically amount to a breach of fiduciary duty." *Hart v. Equitable Life Ins. Soc.*, 75 F. App'x 51, 53 (2d Cir. 2003); *Fitch*, 64 F. Supp. 2d at 230 (finding

that an error in the benefit calculations was unintentional but the fact that some of the

calculations turned out to be inaccurate does not establish that the defendants breached a

fiduciary duty); *Denniston v. Taylor*, No. 98 Civ. 3579 (LTS), 2004 U.S. Dist. LEXIS 1512, at

*32 (S.D.N.Y. Feb. 6, 2004) (finding that a mistake did not support a viable claim for breach of

fiduciary duty; "[f]iduciary status does not necessarily mean liability under the fiduciary

responsibility provisions of ERISA for all mistakes, large and small, in connection with plan

administration. ERISA requires not that fiduciaries perform all of their duties perfectly but,

rather, that they perform those duties 'with the care, skill, prudence and diligence under the

circumstances then prevailing that a prudent man acting in a like capacity and familiar with such

matters would use in the conduct of an enterprise of like character and with like aims.'" (citing

29 U.S.C.A. § 1104(a)(1)(B)).

When faced with facts closely analogous to those purportedly supporting Mr. Lipson's

claims, the Second Circuit held that no breach of fiduciary duty exists, regardless of the

unintentional error resulting in a decrease of pension benefits. In *Hart*, the plaintiff worked for

her employer for two years until 1963, at which time she left her employer for a 13-year break in

service. 75 F. App'x at 52. In 1976, Plaintiff returned to work for her employer until her position

was eliminated in 1999. *Id.* Similar to the present case, plaintiff was erroneously listed in her

employer's computer system with a return to work date ten years earlier than she actually

returned, and as a result, "when plaintiff requested information about her pension benefits

starting in 1987 until her retirement in 1999, her benefits statements erroneously reflected the

extra ten years of service." *Id.* At the time plaintiff was to retire, she was informed she would be

receiving roughly $1,500 a month in benefits; however, when her employer processed the

paperwork to remit the first payment, it discovered the error and informed plaintiff she was only

to receive $500 per month in pension benefits. *Id.* The Court held that "[i]n the absence of anything that might have alerted [her former employer] that its data was inaccurate, we cannot say that it acted imprudently in relying on that data, and the provision of inaccurate information does not amount to a breach of fiduciary duty." *Id.* at 54.

Here, Plaintiff has not alleged facts to show that Defendants acted imprudently in relying on the inaccurate service reference date; rather, as Plaintiff pleads, at the first instance that IBM was alerted of the incorrect calculation—when Plaintiff informed IBM of his retirement—it immediately investigated the error and informed Plaintiff of the incorrect calculation. As such, Plaintiff's breach of fiduciary duty claim must be dismissed.[2]

5.      Count V Must Be Dismissed Because Plaintiff Was Not Discriminated Against; Rather, His Pension Benefits Were Corrected Pursuant to the Terms of the Plan

To the extent that Plaintiff alleges discrimination pursuant to § 1140, Plaintiff's claim must fail. This provision makes it unlawful "to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled . . . [or] because he has given information or has testified or is about to testify in any inquiry or proceeding." 29 U.S.C. § 1140. The primary purpose of this provision is to prevent "employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988) (*quoting West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980)); *see Sandberg v. KPMG Peat*

---

[2] Plaintiff has also alleged his breach of fiduciary duty claim against both IBM and Fidelity; however, Plaintiff has alleged no facts to support such a claim against Fidelity—Plaintiff has simply stated that Fidelity breached its fiduciary duty when it purportedly honored IBM's request to remove funds from Plaintiff's account that he had not earned. (Compl. ¶¶ 77, 104.) Such barebones allegations do not satisfy Plaintiff's pleading burden, and any purported breach of fiduciary duty claim against Fidelity must necessarily be dismissed for failure to state a claim.

*Marwick*, *LLP*, 111 F.3d 331, 334 (2d Cir. 1997) ("This Court has explained that section 510 was designed primarily to prevent unscrupulous employers from discharging or harassing employees in order to keep them from obtaining vested pension rights.") (internal quotations and citations omitted); *Wegmann*, 2016 WL 827780, at *7 (same) (citations omitted).

Plaintiff's § 510 ERISA claim is subject to the *McDonnell Douglas* burden-shifting framework, in which Plaintiff must first establish his *prima facie* case by showing that "(1) he was engaged in a protected activity; (2) defendants were aware of plaintiff's participation in the protected activity; (3) defendants took adverse action against plaintiff; and (4) a causal connection existed between the protected activity and the adverse action." *Monaco v. Smith*, No. 00 Civ. 5845(RMB), 2004 WL 203009, at *13 (S.D.N.Y. Feb. 2, 2004). However, where a plaintiff was not entitled to the benefits he/she claims they were denied, a plaintiff cannot establish a *prima facie* case, and the § 510 claim necessarily fails. *See Pendleton v. QuikTrip Corp.*, 567 F.3d 988, 993 (8th Cir. 2009) ("The district court properly held that [plaintiff] did not make a prima facie case because he was not entitled to any benefits under the plain language of the severance plan."). If a plaintiff is able to establish a *prima facie* case, the burden shifts to the employer to set forth a legitimate, non-discriminatory reason for its actions. *Dister*, 859 F.2d at 1111. If the defendant fulfills this burden, the plaintiff must then establish that the legitimate reasons offered by the defendant were not its true reasons for its actions, but were a pretext for discrimination. *Id.*

Here, Plaintiff simply cannot establish his *prima facie* case for several reasons.  First, Plaintiff was not entitled to pension benefits for the 14 years he was not working for IBM—any outcome to the contrary would be in direct contravention of the terms of the Plan and would furnish an illogical windfall to Plaintiff. *See Pendleton*, 567 F.3d at 993.

Second, Plaintiff has not alleged that he suffered an adverse action—Plaintiff admits he voluntarily resigned, and the only allegation in support of his § 510 claim states, "IBM's conduct shortly after Plaintiff took his leave of absence demonstrated an intentional act to prevent Plaintiff from exercising his rights under the Plan." (Compl. ¶ 105.) Such conclusory claims are insufficient to allege that Plaintiff suffered an adverse employment action.

Moreover, Plaintiff's own allegations in the Complaint belie any claim that Plaintiff suffered an adverse action—Plaintiff's request for early retirement simply uncovered an error in Plaintiff's pension calculations based on the incorrect service reference date; upon discovery of the error, IBM "agreed to reinstate Plaintiff rather than treating Plaintiff as a rehire;" and Plaintiff ultimately voluntarily resigned. (Compl. ¶¶ 50, 68, 83.) As described in the Complaint, Defendants' actions following the discovery of the error were consistent with remedying the miscalculation of benefits and in no way support Plaintiff's § 510 claim.

Finally, even if Plaintiff can plausibly allege the Plan was discriminatorily amended—he cannot—an amendment to a pension plan does not give rise to § 510 claims. A claim that a purported plan amendment gave rise to a § 510 claim was addressed in *Wegmann*, 2016 WL 827780, at *6. There, the court held,

> Plaintiff's § 510 claim boils down to allegations that she was entitled to benefits under the Plan; that the 2008 amendment divested her of those benefits; and that the 2008 amendment was motivated by sex-based discriminatory animus. Under the facts alleged in this case, the 2008 amendment is not the sort of interference with an employment relationship that courts in this District have recognized as giving rise to a claim under § 510. Rather, Plaintiff's claim sounds in the sort of alleged discrimination that Congress found was already addressed by other federal statutes. Accordingly, Plaintiff's allegation that the Plan was amended with the intent to preclude female participation fails to state a claim under § 510 of ERISA.

*Id.* at *8.  As in *Wegmann*, Defendants' actions simply cannot plausibly support Plaintiff's § 510 claim, requiring dismissal of such claim.

> 6.  Count VI, Alleging a Violation of § 102, Fails Because The Plan Was Not Modified—Plaintiff's Benefits Were Simply Corrected to Reflect the Proper Service Reference Date and Plaintiff Was Notified of the Correction

ERISA requires that the plan administrator provide each participant with a copy of the summary plan description and must also provide a summary of any material modification in the terms of the plan.  *See* 29 U.S.C. §§ 1022, 1024(b). Plaintiff does not allege that the Plan Administrator failed to furnish him with a summary plan description or any material modification reflected in a formal amendment. Instead, he claims that the erroneous service date created a special pension plan covering only him which was modified when the service date was corrected. As discussed in Point II.A.3, informal communications allegedly crediting Plaintiff with 14 years of service he did not earn did not create a new pension plan that covered only Plaintiff, and the subsequent correction of the erroneous service date was not a material modification of any such plan. As such, § 102 was not triggered, and Plaintiff was not entitled to any additional notice or explanation of a modification that did not occur.

> B.  <u>Count VII Alleging Discrimination Under NYSHRL Also Fails Because, Not Only is His Claim Time-Barred, But He Has Also Not Alleged Any Facts Supporting His Claim That Correction of the Service Reference Date Was Discriminatorily Motivated by Plaintiff's Age</u>

Lipson also purports to bring a discrimination claim under the NYSHRL; however, apart from the fact that such a claim is completely baseless, it is also time-barred, as Plaintiff's statute of limitations expired in 2014—three years after he discovered the purportedly discriminatory actions of IBM in 2011.  *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) ("the statute of limitations for actions under New York's Human Rights Law is three years.").

Even if his claim was not time-barred, Lipson also fails to allege a single fact suggesting that Defendants' conduct was discriminatory in any way. To establish his claim under NYSHRL, Plaintiff must establish that: (1) he was a member of a protected class, (2) he was qualified for the position held, (3) he was subject to an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See, e.g.*, *Piccone v. Town of Webster*, 511 F. App'x 63, 64 (2d Cir. 2013). As with the § 510 claim, if a plaintiff establishes a *prima facie* case of discrimination under NYSHRL, the burden shifts first to the employer to set forth a legitimate, non-discriminator reason for its actions, and then back to the employee to establish that the proffered reason was actually a pretext for discrimination. *Id.*

Lipson's NYSHRL claim fails, as the only alleged adverse employment action—devoid of facts or circumstances giving rise to an inference of discrimination—is a conclusory statement regarding IBM "discriminating against Plaintiff when it spontaneously eviscerated his Personal Pension Plan after Plaintiff's long tenure with the Company." (i.e., the correction of Lipson's service reference date to reflect his date of hire). (Compl. ¶ 113.) Although a "loss of material benefits" can constitute an "adverse employment action" for purposes of a discrimination claim, *see, e.g.*, *Klein v. N.Y. Univ.*, 786 F. Supp. 2d 830, 844 (S.D.N.Y. 2011), "[a] denial of a benefit cannot be adverse to an employee if the employee was not entitled to such benefit in the first instance." *In re WorldCom, Inc.*, No. 02-13533 (AJG), 2005 Bankr. LEXIS 3465, at *42 (Bankr. S.D.N.Y. June 3, 2005). IBM did not make any changes to Lipson's entitlements under the Plan; it simply corrected his erroneous service reference date, and there is absolutely no suggestion that IBM took this action because of Lipson's age. *See Dorvil v. Hilton Hotels Corp.*, 25 A.D.3d 442, 443, 807 N.Y.S.2d 369 (1st Dep't 2006) (dismissing NYSHRL age discrimination claim

where plaintiff failed to show pretext); *Gioia v. Forbes Media LLC*, 501 F. App'x 52, 54-55, (2d Cir. 2012) (affirming the district court's holding that the plaintiffs failed to raise a genuine issue as to whether the defendant's proffered reason for termination was pretextual). Accordingly, Lipson fails to allege an adverse employment action or any bias to infer discriminatory intent, and his discrimination claim must be dismissed.

> C.    Lipson's Fraud Claims in Counts VIII and IX Fail Because He Has Not Pled His Claims With Particularity

Under New York law, "[t]he elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559, 910 N.E.2d 976 (2009); *see also Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 143 (2d Cir. 2011) ("To state a claim for fraud in the inducement, the party must allege: (i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by appellants; and (iv) resulting damages."). A claim for fraud is subject to the heightened pleading standard of particularity under Rule 9(b), "which requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 27 (2d Cir. 2014) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)). Although Rule 9(b) states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," a general allegation is not the same as a conclusory allegation, and "plaintiffs must still plead the events which they claim give rise to an inference of knowledge." *Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2014) (quoting *Devaney v. Chester*, 813 F.2d 566, 568

(2d Cir. 1987)); *see United States ex rel. Takemoto v. Hartford Fin. Servs. Grp., Inc.*, 157 F. Supp. 3d 273, 280 (W.D.N.Y. Jan. 20, 2016) ("While Rule 9(b) states that 'knowledge . . . may be alleged generally', 'generally is merely a relative term that allows knowledge to be pleaded with less particularity than is required for the pleading of fraud', and 'is not the equivalent of conclusorily . . . Thus . . . plaintiffs must still plead the events which they claim give rise to an inference of knowledge.'" (citing *Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2014)), *aff'd*, 674 F. App'x 92 (2d Cir. 2017).

Lipson's fraud claims lack any specificity whatsoever and the facts actually alleged cannot plausibly support such claims. Plaintiff fails to identify the speaker, state when and where the statements were made, or explain why the statements are fraudulent. Instead, he makes a series of conclusory allegations all alleging entitlement to benefits he never earned. (*See* Compl. ¶¶ 115-25 (alleging, for example, that "Plaintiff reasonably relied upon these promises;" "IBM deliberately misguided Plaintiff in taking his leave of absence in order to sabotage his Personal Pension Plan")). Accordingly, Lipson's fraud claims fall far short of the requirements of New York law and the heightened pleading standard of Rule 9(b).

III.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice in its entirety for failure to state a claim pursuant to Rule 12(b)(6).

Dated: New York, New York
      August 25, 2017

Respectfully submitted,

PAUL HASTINGS LLP


By:        /s/ Patrick W. Shea
            Patrick W. Shea
            Elizabeth A. Vanderlinde

200 Park Avenue
New York, New York 10166
Telephone: 1(212) 318-6000
Facsimile: 1(212) 319-4090

*Attorneys for Defendants*
INTERNATIONAL BUSINESS MACHINES
CORPORATION, and
FIDELITY WORKPLACE SERVICES LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 25, 2017, a copy of the foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Patrick W. Shea
Patrick W. Shea
